FILED

2016 Jan-29 PM 03:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **RODNEY HAMPTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **2:13-cv-02097-AKK** |
| | ) | |
| **SNEAD STATE COMMUNITY** | ) | |
| **COLLEGE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Rodney Hampton brings this case against Snead State Community College alleging racial discrimination (Count I) and retaliation (Count II), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et seq*., as amended by the Civil Rights Act of 1991, and a hostile work environment (Count III), in violation of 42 U.S.C. §1981. Doc. 1. Snead State now moves for summary judgment, doc. 58, and its motion is fully briefed and ripe for review, *see* docs. 60, 61, 77, and 78. For the reasons below, the motion is due to be granted.

As a preliminary matter, the court notes that the parties filed various motions challenging their respective submissions. First, the Defendant's Motion for Relief to Exceed Page Limitation, doc. 59, and Hampton's Motion for Relief to Exceed Page Limit, doc. 76, are **GRANTED**. Second, Hampton's Motion to Strike

Defendant's Affidavits and Motion to Deny Summary Judgment, doc. 75, is **DENIED**. Hampton failed to provide a valid reason for why the court should strike Defendant's affidavits. Finally, the Defendant's Motion to Strike, doc. 79, Hampton's brief, evidentiary submission, motion to strike, and motion to exceed page limit, is also **DENIED**. While Defendant is correct that Hampton's filings are untimely, they nonetheless aid the court in evaluating Defendant's motion for summary judgment.

## I.     Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II.    FACTUAL ALLEGATIONS[1]

Hampton is an African–American male, and Snead State is a two-year community college located in Boaz, Alabama.   Docs. 61-1 at 1-2; 77 at 1. Hampton initially worked at Snead State from 1992 to 1993.   Doc. 61-3 at 3. Snead State re-hired Hampton in 2005, as the Student Support Services Academic Coordinator for the TRIO program.   *Id*.   Hampton has held a variety of positions since then.   *Id*.   Relevant here is the Assistant Athletic Director/Men's Head Basketball Coach position, which Hampton assumed on July 1, 2006.  Doc. 61-3 at 3.   On April 1, 2008, in addition to his role as head coach, Hampton received a temporary appointment to the position of Athletic Director.  Docs. 61-1 at 2; 61-3 at 3.   The additional duties resulted in a $1,000 monthly salary supplement, and required Hampton to supervise eight head coaches and establish policies for the Athletic Department.  Docs. 61-2 at 2; 61-3 at 3.   Although the appointment was initially for a year, doc. 61-3 at 4, Dr. Robert Exley, President of Snead State, obtained permission from the Chancellor of the Alabama Community College System to extend Hampton's appointment as Athletic Director for one additional

---

[1]  The court now focuses on those alleged discrete acts of discrimination that occurred after October 14, 2011.  In its June 13, 2014, Order, doc. 20, the court noted that because Hampton filed his Equal Employment Opportunity Commission (EEOC) Charge of Discrimination on April 11, 2012, doc. 18-1, any discrete act of discrimination for which he makes a claim must have occurred on or after October 14, 2011.  *See* 42 U.S.C. §2000e-5(e)(1); *see also* doc. 20 at 5-6.  Accordingly, the court dismissed with prejudice Hampton's discrimination and retaliation claims for discrete acts of discrimination that occurred prior to October 14, 2011.  Thereafter, despite the court's order, Hampton alleged discrete acts of discrimination in his Second Amended Complaint, doc. 25, and Third Amended Complaint, doc. 29, that occurred prior to October 14, 2011.  Pursuant to the June 13, 2014, Order, those claims are **DISMISSED WITH PREJUDICE**.

4

year.  Docs. 60 at 11; 61-1 at 2-3; 61-3 at 4.  Thereafter, on March 31, 2010, Hampton reverted back to the Assistant Athletic Director/Men's Head Basketball Coach position.  Doc. 61-3 at 4.

The events that triggered this lawsuit trace their origin to July 18, 2011, when Hampton complained of race discrimination[2] to his immediate supervisor, Sean Abernathy, then Athletic Director.  Docs. 61-1 at 5; 77 at 21, 36.  Abernathy, in turn, relayed the complaint to Dr. Exley, who contacted Hampton to ask if Hampton wanted to file a formal complaint.  Doc. 60 at 16.  When Hampton responded that he wanted to handle the matter informally, Dr. Exley informed Hampton of Snead State's grievance process and encouraged Hampton to utilize it.  *Id*.; doc. 61-1 at 5.  Nonetheless, two days later, Dr. Exley's administrative assistant scheduled a meeting between Dr. Exley and Hampton concerning Hampton's "formal complaint."  Doc. 78 at 28.  During the meeting, Dr. Exley reviewed Hampton's concerns and again urged Hampton to file a formal complaint.  Docs. 60 at 16; 61-1 at 5-6.  However, because Hampton reasserted his wish to resolve the matter informally, Dr. Exley sent Hampton a memorandum after the meeting concerning the "Allegations of Discrimination and Racism at

---

[2]  As part of his evidentiary submission, Hampton submitted a document entitled "Discrimination and hostile work environment complaint per title 9 and 7," doc. 78 at 24-26, which outlines 36 points of alleged discrimination.  However, in his complaint that initiated this lawsuit, Hampton only alleges being demoted from his position as Assistant Athletic Director/Men's Head Basketball Coach and his negative performance evaluation as discrete acts of discrimination against him that occurred after October 14, 2011.  *See* doc. 29.

Snead State Community College" and recommended that Hampton file a formal complaint. Docs. 60 at 17; 61-1 at 6; 78 at 7.

Hampton apparently worked without incident until October 24, 2011, when ten of his basketball players overturned a vending machine and stole its contents. Docs. 60 at 12; 61-1 at 6; 61-2 at 3. Hampton met with Mark Richard, who had replaced Abernathy as the Athletic Director, to discuss the incident, and purportedly "agreed" and signed disciplinary notices for the players involved. Docs. 60 at 13; 61-2 at 3. However, Hampton later e-mailed Richard expressing that he saw "some fundamental principles being violated that [spoke] against [Richard's] idea" for punishment, but that Richard had "[Hampton's] full support on things [Hampton felt they were] doing right." Doc. 78 at 19.

The discipline of the ten athletes became an issue when the parent of one player challenged the discipline. Doc. 60 at 13; 61-2 at 3-4. In a meeting with Hampton and Richard, the parent asked Hampton if he agreed with the discipline, and Hampton conveyed that the discipline was too harsh. Docs. 60 at 13; 61-2 at 3-4. Hampton's failure to state that he agreed with the disciplinary letters he signed resulted in Richard accusing Hampton of insubordination. Doc. 61-2 at 4.

Shortly after this incident, Hampton received a negative performance evaluation. Docs. 60 at 27; 61-2 at 6; 61-7. This was the first performance evaluation Hampton had received since his 2007 "Exceeds Expectations" rating,

6

even though his job description mentions an annual performance evaluation.  Docs. 78 at 11, 77-80; 78-1 at 1.  In the evaluation, Richard rated Hampton as:  (1) "Meets Expectations" in Knowledge, Skills and Abilities (Position Specific); (2) "Inconsistently Meets Expectations" in Results-focused (Productivity); (3) "Fails to Meet Expectations" in Communications (Internal and External); (4) "Inconsistently Meets Expectations" in Cooperation/Customer Service (Ambassador for the College); and (5) "Fails to Meet Expectations" in Campus Involvement (Attendance at Events and Activities).  Docs. 60 at 27; 61-7. Contemporaneous with the evaluation, Richard drafted a memo to Dr. Exley and Arlene Brown, the Director of Human Resources, recommending that the college transfer Hampton laterally to the Student Support Services Academic Coordinator position due to his performance and attitude.  Docs. 60 at 30; 61-1 at 7; 61-2 at 6; 61-9.  Dr. Exley rejected the recommendation.  Docs. 60 at 30; 61-1 at 7.

The next alleged incident of insubordination occurred two months later, on January 4, 2012, when Hampton accused Richard and other coaches of lacking integrity and moral conduct.  Doc. 61-2 at 7.  The outburst occurred during a coaches meeting when Richard and the other coaches disagreed with Hampton's method of calculating grade point averages for eligibility purposes.  *Id*.  Two months after this incident, Richard drafted a second memo to Dr. Exley recommending Hampton's transfer to best serve the interest of the college and end

the conflict and dissention in the department.  Docs. 60 at 31; 61-1 at 7; 61-2 at 7; 78 at 92-93.  Dr. Exley accepted this recommendation and, effective April 10, 2012, transferred Hampton to the vacant position of Student Support Services Academic Coordinator, which is a position Hampton previously held.  Docs. 60 at 12, 31; 61-1 at 7-8; 61-3 at 4.  The transfer had no impact on Hampton's salary schedule, compensation, and benefits.  Docs. 60 at 12; 61-3 at 4.

## III.   ANALYSIS

The court addresses each of Hampton's three claims separately below.

### A. Count I - Racial Discrimination

In Count I, Hampton pleads a race discrimination claim for his removal from the men's basketball coach position and for the negative performance evaluation he received.  Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C.A. §2000e-2(1). Where, as here, Hampton is attempting to prove intentional discrimination through circumstantial evidence, the court utilizes the *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), burden-shifting method of proof.  Under this method, Hampton bears the burden of establishing a *prima facie* case of racial discrimination.  *See Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citation omitted).  If Hampton satisfies his initial burden, "then

[Snead State] must show a legitimate, non-discriminatory reason for its employment action." *Id*. (citation omitted). "If it does so, then [Hampton] must prove that the reason provided by [Snead State] is a pretext for unlawful discrimination." *Id*. (citation omitted). However, "[t]he ultimate burden of persuading the trier of fact that [Snead State] intentionally discriminated against [Hampton] remains at all times with [Hampton]." *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citation omitted).

**1. Hampton cannot establish a prima facie case of race discrimination**

To establish a *prima facie* case of racial discrimination, Hampton must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subjected to an adverse employment action; and (4) Snead State treated similarly situated employees outside of Hampton's protected class more favorably. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). At issue here is whether Hampton meets the last three elements of the prima facie case. Snead State contends first that Hampton was not qualified for the coaching position. However, this assertion is based on Hampton's attitude and performance during the 2011-2012 academic year, doc. 60 at 38, rather than his qualifications. The fact that Hampton held the position of Men's Head Basketball Coach from 2006 until 2012, doc. 61-3 at 3, and "exceeded expectations" in his 2007 evaluation, doc. 78 at 77-80, indicates that Hampton was indeed qualified for the position. *See Vessels*

*v. Atlanta Independent School System*, 408 F.3d 763, 769 (11th Cir. 2005) ("[T]o demonstrate that he [or she] was qualified for the position, a Title VII plaintiff need only show that he or she satisfied an employer's objective qualifications."). While Snead State correctly notes that Hampton received ratings of "inconsistently meets" or "fails to meet" expectations in his 2011 performance evaluation, the focus of the qualification prong is on a plaintiff's skills and background. *See Clark v. Coats & Clark*, 990 F.2d 1217, 1227 (11th Cir. 1993). As such, concerns about Hampton's performance do not establish that Hampton was unqualified, and are instead issues more appropriately raised in the "legitimate, non-discriminatory reason" inquiry of the *McDonnell Douglas* scheme. *See id*; *Young v. General Food Corp.*, 840 F.2d 825, 829 n. 3 (11th Cir. 1988); *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1495 n. 2 (11th Cir. 1987).

The court also disagrees, in part, with Snead State's contention that Hampton did not suffer an adverse employment action. An adverse employment action involves an "ultimate employment decision" or some other substantiality in the employment context, "such as termination, failure to hire, or demotion." *Crawford*, 529 F.3d at 970 (quoting *Stavropoulos v. Firestone*, 361 F.3d 610, 617 (11th Cir. 2000)). Conduct falling short of an ultimate employment decision must, in some substantial way, "alter[] the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or

10

adversely affect [] his or her status as an employee." *Crawford*, 529 F.3d at 970 (quoting *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)). Finally, with respect to substantiality, the employee must demonstrate that he or she suffered "a *serious and material* change in the terms, conditions, or privileges of employment." *Crawford*, 529 F.3d at 970-971 (quoting *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232 (11th Cir. 2001) (emphasis in original)).

Hampton can establish an adverse employment action with respect to his "lateral transfer",[3] in part, because Snead State can hardly contend that the head coaching position of the basketball program is not one of the higher status positions at its institution.  Indeed, as Assistant Athletic Director/Men's Head Basketball Coach, Hampton reported directly to a member of the President's cabinet, represented the entire college at athletic-related meetings in the President or Athletic Director's absence, had a private office, and had supervisory and money management authority.  Docs. 61-1 at 2; 61-2 at 2; 77 at 29; 78 at 11.  In contrast, Hampton's new position had none of these things, and, in addition to the diminished status, Hampton purportedly also now had the clerical task of disseminating the daily mail to his co-workers.   Docs. 77 at 29; 78 at 12. Moreover, as it relates to the loss of a private office, as Hampton notes, his former players, fellow staff members, and even a member of the janitorial staff laughed

---

[3]  In contrast, Hampton cannot establish an adverse employment action with regard to his negative performance evaluation, because it did not result in "loss of pay or benefits or further discipline."  *See Rainey v. Holder*, 412 Fed. App'x. 235, 238 (11th Cir. 2011) (quoting *Davis*, 245 F.3d at 1240)).

and made comments when they noticed that his new position only came with a desk in an entrance area instead of an office.  Doc. 77 at 29; 78 at 17.  As one court has noted, "[w]e do not believe it can be seriously contended that the furnishing of a private office, . . . was not a 'privilege' within the meaning of Title VII . . . ." *Harrington v. Vandalia-Butler Bd. Of Ed.*, 585 F.2d 192, 194 (6th Cir. 1978).  For all these reasons, the court disagrees with Snead State's contention that Hampton cannot demonstrate that he suffered an adverse employment action.

The court turns now to the final element of the prima facie case – i.e. whether Hampton has established that Snead State treated him differently than similarly situated employees.  *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).  "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."  *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (quoting *Jones v. Bessemer Carraway Med Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998)).  "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed."  *Maniccia*, 171 F.3d at 1368 (quoting *Jones*, 137 F.3d at 1311).  "[T]he quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from

second-guessing employer's reasonable decisions and confusing apples with oranges." *Maniccia*, 171 F.3d at 1368 (citation omitted).

Here, Snead State contends that it transferred Hampton laterally because of insubordination, lack of cooperation with others, lack of communication, poor judgment, and lack of academic performance.  Doc. 78 at 92-93.  In support of these contentions, Snead State cites Hampton's insubordination after the vending machine incident and at the coaches' meeting, purported failures to be ready for a scheduled photo shoot with the Public Relation's Department and to timely submit a game summary, missing or arriving late to coaches' meetings, making an inappropriate comment to a female basketball team manager, allowing students to drive school vans, and lack of academic performance by the basketball team.  *Id*. To satisfy the final element of the prima facie case, Hampton must point to a similarly situated employee outside of his protected class who engaged in nearly identical conduct and yet was not demoted or transferred.  *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1327 n. 17 (11th Cir. 2011) (the comparator must have engaged in the same or similar conduct) (internal quotation marks and citations omitted).   In that regard, Hampton identifies Adam Rhoden, Steve Machen, and Gerry Ledbetter, white males who coached the cheer, tennis, and baseball teams, respectively, as comparators whom purportedly engaged in similar misconduct, but received less severe punishment.  *See* docs. 60 at 21; 77 at 60; 78

13

at 37, 39.   Unfortunately, for the reasons stated below, Rhoden, Machen, and Ledbetter are not proper comparators.

Hampton alleges that in April of 2008 Rhoden and Machen engaged in insubordinate behavior when they confronted the Athletic Director and told him, "you will not tell [us] what to do and you can take it up front [sic] if you like." Docs. 77 at 10-11; 78 at 37.   Next, Hampton alleges that Rhoden defied a direct order from the Athletic Director and used the gym floor while a construction crew was working on it in June of 2008, docs. 61 at 21; 78 at 37, and that Machen made an inappropriate comment about not recruiting minorities for his team during the 2009-2010 school year, doc. 77 at 43, 61.   These contentions miss the mark because they involved a different Athletic Director.   To rely on another employee's infraction, "[i]t generally also must be shown that the plaintiff and a would-be comparator dealt with the same decision-making supervisor."   *Dent v. Federal Mogul Corp.*, 129 F. Supp. 2d 1311, 1314 (N.D. Ala. 2001) (citing *Jones*, 137 F.3d at 1321 n. 7).   *But see Anderson v. WMBG-42*, 253 F.3d 561, 566 (11th Cir. 2001) (holding that "different supervisors *may* not be comparable for the purposes of Title VII analysis," and that when "the plaintiff and proffered comparators . . . fell within the primary responsibility of one middle manager and the same supervisory chain of command . . . [d]isparate treatment analysis requires that none of the participants in the decision making process be influenced by racial bias.")

(emphasis in original) (citations and quotations omitted).  Here, Hampton was the Athletic Director in 2008 during Rhoden and Machen's incidents of insubordination.  Doc. 77 at 10-11.  Moreover, while these incidents were reported to Dr. Exley, *id.* at 10-11, 13-14, 34, and he is the common link with Hampton's infractions, *see Anderson*, 253 F.3d at 566, the decision to not transfer does not mean that Rhoden and Machen are proper comparators or were treated more favorably.  At best these facts only establish that Rhoden and Machen each engaged in two incidents of insubordination – the same as Hampton. In contrast, Snead State contends that it demoted Hampton for his two acts of insubordination *and* because he missed coaches' meetings, purportedly failed to be ready for a scheduled photo shoot with the Public Relation's Department and to timely submit a game summary, made an inappropriate comment to a female basketball team manager, allowed students to drive school vans, and because of the basketball team's lack of academic performance.  *See* doc. 78 at 92-93.  The quantity and quality of Hampton's misconduct prevents this court from finding that he is similarly situated to Rhoden and Machen. *See Maniccia*, 171 F.3d at 1368.

Ledbetter is also not a proper comparator because he engaged in different misconduct than the conduct that led to Hampton's transfer.  Specifically, Hampton contends that despite giving advance notice to his supervisor of a conflict between a previously scheduled religious obligation that coincided with a

commencement ceremony in May of 2011, Hampton nonetheless received a verbal reprimand and a letter of reprimand for missing the ceremony, whereas Snead State failed to discipline Ledbetter for missing the same commencement ceremony. Docs. 61-2 at 6; 78 at 39.  Snead State disputes this contention and claims that the Athletic Director issued letters of reprimand to both Hampton and Ledbetter.  Doc. 61-2 at 6.  Even if Hampton is correct that Snead State only disciplined him, this contention does not help Hampton because it is not nearly identical to the conduct that led to Hampton's transfer.  In fact, Snead State does not even mention this incident as justification for Hampton's transfer.  Therefore, Hampton's prima facie case fails, and summary judgment is due on the race discrimination claim.

### 2.  Hampton's claim also fails because he cannot rebut Snead State's Non-Discriminatory, Legitimate Reasons

Alternatively, because "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the s*ine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case, [and because] the plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case," *Smith*, 644 F.3d at 1328, the court will assume that Hampton can make a prima facie case.  Therefore, the next step in the *McDonnell* framework is for Snead State to articulate a legitimate, non-discriminatory reason for its employment action.  *See Burke-Fowler*, 447 F.3d at 1323.  Snead State has met its burden through its contention that it transferred Hampton because of

16

insubordination, lack of cooperation with others, lack of communication, poor judgment, and lack of academic performance.  Doc. 78 at 92-93.  Consequently, the burden shifts to Hampton to prove that Snead State's reasons are pretext for unlawful discrimination.  *See Burke-Fowler*, 447 F.3d at 1323.  Unfortunately, Hampton has failed to meet his burden.  In fact, Hampton does not rebut all of Snead State's articulated reasons and focuses only on his insubordination. Moreover, Hampton admits to engaging in some of the conduct Snead State cited in support of their decision to transfer him – i.e. being late for a meeting and conveying to a parent that the punishment was too harsh for the players involved in the vending machine incident, doc. 77 at 23, 55, 31-32, – and he does not contest that he made an inappropriate comment to a female basketball team manager or that he allowed students to drive school vans, *see* doc. 78 at 62.  Because Hampton must rebut each of Snead State's articulated reasons to establish pretext and failed to do so, his claim fails.  *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997).

In short, summary judgment is due on the race claim because Hampton failed to establish a prima facie case, or rebut each of Snead State's non-discriminatory, legitimate reasons for his transfer.  In fact, Hampton admitted to engaging in the bulk of the conduct Snead State cited as justification, and also failed to present evidence suggesting a race based reason for his transfer.  Because

"[a] reason cannot be pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason," *Blue v. Dunn Constr. Co., Inc.*, 453 Fed. App'x. 881, 884 (11th Cir. 2011) (emphasis in original), summary judgment is due to be granted.

## B. Count II - Retaliation

In Count II, Hampton alleges a claim of retaliation for the same conduct. Doc. 29 at 2. To establish a prima facie case of retaliation, Hampton must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) that there is a causal relation between the two events. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (quoting *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994) (internal citations omitted). Hampton can establish the first two prongs. As to the first, although Snead State concedes that Hampton complained about discrimination, Snead State contends nonetheless that Hampton did not engage in protected activity because Hampton never filed a formal complaint. *See* doc. 61-1 at 5-6. This contention is unavailing because "the protection afforded by [Title VII] is not limited to individuals who have filed formal complaints, but extends as well to those . . . who informally voice complaints to their superiors . . . ." *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989). Accordingly, Hampton has established the first part of the prima facie case.

Likewise, for the reasons outlined by the court with respect to the discrimination claim, Hampton has also demonstrated that he suffered an adverse employment action. *See supra* at 10-12.

The court turns now to the causal link prong. Causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. *Thomas*, 506 F.3d at 1364. But mere temporal proximity, without more, must be "very close." *Id*. (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) (internal citations omitted)). For example, a three to four month disparity between the statutorily protected expression and the adverse employment action is not enough. *Thomas*, 506 F.3d at 1364. Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the retaliation claim fails as a matter of law. *Id*.

Here, Hampton complained internally of race discrimination in July of 2011. Doc. 78 at 16. Thereafter, he contends that Snead State retaliated against him by giving him a negative performance evaluation in November of 2011 and by demoting him in April of 2012. Docs. 29 at 2; 77 at 21-26. The negative performance evaluation is a non-starter because "when a lower performance evaluation does not result in a 'loss of pay or benefits or further discipline,' it does not constitute an adverse employment action." *Rainey*, 412 Fed. App'x. at 338

(quoting *Davis*, 245 F.3d at 1240).  As for the alleged demotion, it occurred nine months after Hampton's statutorily protected activity.  Doc. 61-1 at 7.  Absent evidence showing that Hampton's statutorily protected expression was the but-for cause of the adverse employment action, the nine month disparity between the statutorily protected expression and the alleged adverse employment action is not enough to establish causation.  *See Thomas,* 506 F.3d at 1364.  Moreover, even if Hampton can establish a prima facie case, his retaliation claim still fails because Snead State has articulated legitimate, non-discriminatory reasons for its adverse employment action, which Hampton has failed to rebut.  *See supra* at 16-17.

### C. Count III - Hostile Work Environment

Hampton's hostile work environment claim, which he pleads under 42 U.S.C. §1981, doc. 29 at 2, also fails because "[t]he Eleventh Circuit provided in *Butts v. Cnty. of Volusia*, 222 F.3d 891, 893 (11th Cir. 2000), that '§1983 constitutes the exclusive remedy against state actors for violations of the rights contained in § 1981,'" *Jones v. Water Works Bd. Of the City of Birmingham*, 2012 WL 2856651, at *8 (N.D. Ala. 2012).  Put differently, the court "refused to find in §1981 an implied cause of action against state actors because Congress had clearly established §1983 as the remedial scheme against state actors."  *Id.* (quoting *Butts* 222 F.3d at 834); s*ee also Brown v. Sch. Bd. Of Orange Cnty., Fla.*, 459 F. App'x. 817, 818-19 (11th Cir. 2012) ("Claims against state actors under §1981 must be

brought pursuant to 42 U.S.C. §1983.").  As a member of the Alabama Community College System, Snead State is a "state actor" for purposes of §1983.  *See* docs. 60 at 8; 60-1 at 2; *see also Alexander v. Chattahoochee Valley Community College*, 525 F. Supp. 2d 1274, 1296 (M.D. Ala. 2004) (Alabama community colleges are state actors) (internal citations omitted).  Therefore, because Hampton has failed to properly assert his §1981 claim pursuant to §1983, summary judgment is due to be granted on his hostile work environment claim.

## IV.   CONCLUSION

In sum, Snead State's motion for summary judgment is due to be granted. The court will enter a separate order in accordance with this memorandum opinion.

**DONE** the 29th day of January, 2016.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE